UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 03-156-DLB

ELSIE EWBANK, ET AL                                                                   PLAINTIFFS

VS.                           MEMORANDUM OPINION & ORDER

GALLATIN COUNTY, KENTUCKY                                                      DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs commenced this action against Defendant, alleging that they have been discriminated against and denied access to programs, services, and activities offered at the county courthouse by reason of their disabilities, in violation of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 791 *et seq.*, and the Kentucky Civil Rights Act (KCRA), K.R.S. § 344.010 *et seq*. The Court has jurisdiction under 28 U.S.C. § 1331.

This matter is presently before the Court upon the parties cross motions for summary judgment.[1] (Docs. #38, 45). Both parties filed responses (Docs. #47-48), and replies. (Docs. # 49-50). On August 10, 2005, Defendant filed a supplemental memorandum (Doc. #51), which Plaintiffs have moved to strike on the ground that it was untimely and relies on an unpublished decision of the Kentucky Court of Appeals. (Doc. #52). Defendant filed a response to Plaintiffs' motion to strike. (Doc. #53).

---

[1]Plaintiffs have moved for partial summary judgment on the ADA and KCRA claims only.

1

For reasons that follow, the Court concludes that Plaintiffs' motion for summary judgment (Doc. #45) will be **granted in part**, and **denied in part**. Similarly, Defendant's motion for summary judgment (Doc. #38) will be **granted in part**, and **denied in part**.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiffs are four disabled individuals. Elsie Ewbank is an amputee (leg), who is wheelchair-bound; Tom Rouse suffers from multiple sclerosis, has lost full use of his right leg, and uses a motorized scooter; Pam McIntyre suffers from arthritis of the knee and hip; and Ron Adams sustained a fractured neck in a coal mining accident several years ago, resulting in quadriplegia. Ewbank previously served as a member of the Gallatin County Fiscal Court and attended at least one meeting at the courthouse;[2] Rouse and Adams are attorneys, who no longer practice in Gallatin County due to the accessibility issues at the courthouse; and McIntyre works in the Gallatin Circuit Court Clerk's office, and her office is located on the second floor of the courthouse. Ewbank and McIntyre are Gallatin County residents.

The Gallatin County Courthouse was built in 1838, and is located in Warsaw, Kentucky. The building is a two-story structure, with a basement (i.e., there are three levels

---

[2] Ms. Ewbank testified that in order for her to attend the meeting, she had to "scoot up the stairs on her butt lifting [her]self with [her] arms." (Ewbank deposition, p.22). She employed the same "strategy" to attend hearings in a nuisance action in which she was the complaining party. (*Id*. at 33). The fact that Ms. Ewbank was eventually able to attend the meeting and hearings is not dispositive. *See Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (rejecting the defendant's argument that because the plaintiffs were able to attend the trial, they had not alleged a violation of Title II. The court clarified that "a violation of Title II ... does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be 'readily accessible.'").

Ms. Ewbank also testified that, in late 2002 or 2003, she was unable to obtain a license plate for her vehicle because the ramp to the Washington Street entrance was not adequately cleared of snow and ice. (*Id.* at 28).

in all). The first floor houses the Circuit Court Clerk's office, the County Clerk's office, and the property records. The District Court Clerk's office, as well as the lone courtroom, are located on the second floor of the courthouse. The courthouse has four entrances: Highway 42 (front), High Street (back), Franklin Street (which is permanently blocked), and Washington Street (side). The side entrance to the courthouse is accessible via a wheelchair ramp, which Plaintiffs allege is too narrow and is not always cleared in inclement weather. That ramp leads to a door that is also too narrow, opens inward, and has a raised threshold that is difficult to traverse. The building does not have an elevator, and the only public restrooms are located in the basement.[3]

In January 1999, Defendant initiated the process of renovating the courthouse to make it ADA-compliant. Because the courthouse is home to state court facilities (i.e., the district and circuit courts),[4] Defendant solicited the help of the Commonwealth, specifically the Administrative Office of the Courts (AOC), which is the administrative and fiscal arm of the Court of Justice. According to Defendant, the Gallatin Fiscal Court began working with Brighton Architecture, LLC in February 1999 to develop plans for the renovation. Meanwhile, the AOC developed a prioritized list of proposed court facilities projects to submit to the Capital Planning Advisory Board (CPAB), and the General Assembly for ultimate approval. The Gallatin County Courthouse ranked 7th out of the 21 projects on the list. Defendant and the AOC then entered into a "memorandum of understanding," in

---

[3] There are restrooms for court personnel on the second floor.

[4] This is required under K.R.S. § 26A.100.

which they pledged to coordinate efforts to complete the construction, which is projected to cost $2.26 million, "in the most effective manner possible." (Doc. #38, Exh. 15).

Despite these efforts, construction on the Gallatin County Courthouse did not (and to date, still has not) commenced, due in large part to the failure of the General Assembly to adopt its 2002-04 biennial budget.[5] However, on March 31, 2005, the AOC informed Defendant by letter that the General Assembly had given it the "green light" to proceed with the Gallatin County Courthouse renovation, as well as 17 other courthouse projects across the Commonwealth. This process was set to begin in mid-October, though, having received no word on whether it did, the Court will presume that it did not.

The following facts are undisputed: 1) Plaintiffs are "qualified individuals with disabilities" under the ADA, 2) Defendant is a "public entity" under the ADA, and 3) Title II affords Plaintiffs a private cause of action. Similarly, the condition of the courthouse is not in dispute. Plaintiffs have, therefore, moved for summary judgment on their Title II and KCRA claims. In response (and in support of its own motion for summary judgment), Defendant argues that: 1) Plaintiffs' chief complaints relate to the inaccessibility of the court facilities, for which the State is liable, 2) it has made reasonable modifications to render its (i.e., county-provided) services, programs, and activities accessible, 3) the structural renovations proposed by Plaintiffs would impose an undue financial burden, 4) it is entitled to judgment as a matter of law on Plaintiffs' RA claims because they have failed to establish that Gallatin County receives federal funding, and 5) Plaintiffs are precluded from

---

[5] The present suit is undoubtedly a manifestation of Plaintiffs' frustration with the lack of progress. The minutes from the October 23, 2002 Gallatin Fiscal Court meeting indicate that Elsie Ewbank (who is a member of the court), and her attorney, publicly voiced their frustration. (Doc. #38, Exh. 16).

4

recovering compensatory damages absent evidence of intentional discrimination/deliberate indifference, or punitive damages.[6]

Plaintiffs argue that Defendant is attempting to divert the Court's attention away from the fact that its duty to make the courthouse ADA-compliant is independent of any issues related to the funding for the renovations.  They also argue that Defendant is free to make minor improvements without AOC approval or assistance, and that any modifications it has already made are not "reasonable" and have not been made in an "integrated" setting.

## II.  ANALYSIS

### A.     Summary judgment standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial.  *Id.* at 324.  All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986).  However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

---

[6] Plaintiffs concede the unavailability of punitive damages.  *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

### B.     Count III - Kentucky Civil Rights Act claims

On August 10, 2005, Defendant filed a supplemental memorandum, claiming that it is entitled to summary judgment on Plaintiffs' KCRA claims because the statute "does not contain any provision similar to Title II of the ADA and simply does not require a governmental entity to make its existing structures fully accessible to disabled individuals." In support, Defendant relies on the Kentucky Court of Appeals' recent decision in *Lawrence v. Bushart*, No. 2004-CA-000123, 2005 WL 1842746 at *5 (Ky. Ct. App. Aug. 5, 2005), where the court stated, "the KCRA does not 'specifically adopt' the governmental public services provisions of Title II." Plaintiffs have moved to strike this memo, arguing that it was untimely under the briefing schedule and relies solely on an unpublished decision that is not yet final.[7]

> The general purpose of the Kentucky Civil Rights act is to:
>
> provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964 ..., Title VIII of the Federal Civil Rights Act of 1968 ..., the Fair Housing Act as amended ..., the Federal Age Discrimination in Employment Act of 1967 ..., *the Americans with Disabilities Act of 1990* ..., and the Civil Rights Act of 1991 ....

K.R.S. § 344.020(1)(a) (emphasis added).  Nevertheless, while the Kentucky General Assembly enacted certain amendments to the KCRA that generally track the essential language of the employment title of the ADA (Title I), it has not done so with respect to the public services title at issue in this case (Title II).  This was confirmed by the *Lawrence* decision, where a group of disabled individuals brought an action against state and county

---

[7] Rehearing was denied in the case on October 26, 2005. Therefore, under Kentucky Civil Rule 76.30(2)(c)(ii), the opinion became final 31 days later (no petition for discretionary review was filed).

6

agencies and officials, challenging validity of a state statute requiring county clerks to charge disabled persons an $8 fee to obtain accessible parking placards. In discussing the plaintiffs' claims, the circuit court noted:

> Plaintiffs also argue that the statutory fees for issuing parking placards violate the Kentucky Civil Rights Act (KCRA). But clearly the KCRA does not repeal, either expressly or impliedly, KRS 189.456, the statute authorizing the placard fee. Nor did the Kentucky General Assembly waive sovereign immunity with respect to Title II of the ADA. *The Generally Assembly did specifically adopt the employment and public accommodations provisions of Titles I and III of the ADA, but excluded any mention of the governmental public services provisions of Title II.* If the Kentucky General Assembly intended to make the placard fees illegal under the KCRA, it could simply have repealed the statutory authorization of such fees. It did not do so. No KCRA violation exists in this case.

*Lawrence*, 2005 WL 1842746 at *4 (emphasis added). After reviewing the KCRA in its entirety, the court of appeals agreed. *Id*. at *5.

Defendant argues that, in light of *Lawrence*, it is entitled to summary judgment on Plaintiffs' KCRA claims. Plaintiffs attack the precedential value of the decision, and claim that Defendant's supplemental memorandum was untimely. What is telling, however, is what Plaintiffs failed to say, that is, they failed to point to a specific section of the KCRA that would support their claims. Therefore, in light of the fact that the *Lawrence* decision was not rendered until after the time for briefing expired, the Court will excuse any alleged untimeliness on Defendant's behalf. Similarly, even though it is an unpublished decision of the Kentucky Court of Appeals, the Court concludes that it may rely on *Lawrence* as persuasive authority. Finally, the Court's own review of the KCRA, as a whole, failed to reveal a statutory basis for Plaintiffs' state law claims.

For these reasons, Plaintiffs' motion to strike is **denied**. Furthermore, Defendant's motion for summary judgment is **granted** as to Plaintiffs' KCRA claims (Count III), and Plaintiffs' cross motion is **denied**.

### C. Count II - Rehabilitation Act claims

Defendant likewise argues that Plaintiffs' Rehabilitation Act claims must fail because they have failed to establish that it, as owner of the Gallatin County Courthouse, is a recipient of federal funds. In response, Plaintiffs state generally that:

> This Court can take judicial notice of the fact that Counties throughout the Commonwealth receive federal highway dollars, federal grants for local projects, homeland security monies and that the courts administer, prosecute and provide defense for persons receiving social security, housing assistance, AFDC, WIC and federally funded public assistance programs. Though some of that money may be routed through the state down to the counties, nevertheless federal funds do in fact flow to counties and into and through county courthouses.

(Doc. #47, p.11). Moreover, they claim that Defendant's "self serving" denial that it receives federal funds, in response to a request for admission, is insufficient to award summary judgment in its favor.

The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* governs handicap discrimination claims. *Watson v. The City of Mason*, No. C-I-04-283, 2005 WL 3018690 at *3 (S.D. Ohio Nov. 9, 2005). Section 794 of the Act provides in pertinent part that:

> No otherwise qualified individual with a disability in the United States ... shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794. Other than the general averments above, Plaintiffs do not allege, nor have they offered any proof, that Defendant is a recipient of federal funds. Essentially,

therefore, Defendant has challenged Plaintiffs to "put up or shut up" on a critical issue by moving for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

In this case, even affording all reasonable inferences, and construing the evidence in a light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to come forward with evidence that creates a genuine issue of material fact to be resolved by a jury (i.e., whether Defendant receives federal funds). Accordingly, the Court determines that the Rehabilitation Act is inapplicable. Defendant's motion for summary judgment with respect to Count II of Plaintiffs' complaint is, therefore, **granted**.

### D.     Count I - Americans with Disabilities Act claims

The Court now turns to the gravamen of Plaintiffs' suit, that is, their claim that they have been discriminated against and denied access to the services, benefits, and activities of the Gallatin County Courthouse by reason of their respective disabilities in violation of Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, Plaintiffs must establish that (1) they have disabilities; (2) they are otherwise qualified; and (3) they are being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of their disabilities. *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003).

The ADA seeks to eliminate disability discrimination on three fronts: employment (Title I, 42 U.S.C. §§ 12111-12117); public services offered by public agencies (Title II, 42 U.S.C. §§ 12131-12165); and public services and accommodations offered by private entities (Title III, 42 U.S.C. §§ 12131-12165). *Watson*, 2005 WL 3018690 at *4. Plaintiffs seek relief under Title II, which defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The ADA's prohibition of discrimination in services, programs, or activities "encompasses virtually everything a public entity does." *Johnson v. City of Saline,* 151 F.3d 564, 569 (6th Cir. 1998). "Public entity" includes "any state or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §§ 12131(1)(A), (B). There is no dispute in this case that Plaintiffs are "qualified individuals with disabilities," or that Defendant is a covered "public entity."

Defendant advances three separate arguments in support of its motion for summary judgment on Plaintiffs' Title II claims. First, Defendant argues that Plaintiffs' chief complaints relate to the alleged inaccessibility of the district and circuit court facilities in the courthouse, for which the State is liable. Second, Defendant claims that it has undertaken "reasonable modifications" to ensure that all county services, programs, and activities at the courthouse are accessible. Finally, Defendant maintains that the proposed renovations would result in an overwhelming financial burden on the County. Each of these arguments will be addressed in turn.

According to Defendant, Plaintiffs' Title II claims must fail because they have not been denied access to any county services, programs, or activities.  Instead, Defendant claims that "if anyone is liable to Plaintiffs, it is the State."  Defendant's argument is unavailing for two reasons.  First, it misapprehends the extent of Plaintiffs' complaints.  Second, it is contrary to Title II's implementing regulations.

Defendant claims that Plaintiffs' allegations are three-pronged: 1) judicial proceedings normally occur in the second-floor courtroom, 2) the district court records are stored/maintained on the second floor, and 3) Pamela McIntyre's office is located on the second floor of the courthouse.  Defendant argues that, because these allegations relate to court facilities that are operated by the State, it is the State's, not the County's, obligation to ensure that they are accessible.  Defendant, however, presents an over-simplified characterization of the evidence.  The evidence also reveals that: 1) the only public restrooms are located in the basement of the courthouse, 2) the courthouse is not equipped with an elevator, escalator, chairlift, or any other device to make the second floor accessible to individuals with mobility impairments, and 3) the ramp to the Washington Street entrance (the only handicapped-accessible entrance) is too narrow, the threshold is raised, and the door itself is manual, too narrow, and opens inward.

More importantly, despite the division of space and responsibility inside the courthouse between the State and County, the relevant inquiry for Title II purposes is whether the courthouse, when viewed in its entirety, is readily accessible.  The regulations promulgated by the Department of Justice state:

> A public entity shall operate each service, program, or activity so that the service, program, or activity, *when viewed in its entirety*, is readily accessible to and usable by individuals with disabilities. This paragraph does not--

11

> (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;

28 C.F.R. § 35.150(a) (emphasis added). The United States District Court for the Southern District of New York had occasion to analyze this issue in *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 223-24 (S.D. N.Y. 1999). In that case, a group of disabled individuals filed suit against the City of New York, its Parks and Recreation Department, and the New York Yankees baseball organization, alleging that Yankee Stadium was not accessible to individuals with disabilities in violation of Title II of the ADA. There, much like in the present case, there was a dispute about which party was ultimately responsible for making the stadium ADA-compliant. *Id*. at 222, n.1.

The City argued that because the regulations state that the service, program, or activity must be readily accessible "when viewed in its entirety," the court was required to look at the accessibility of the stadium as a whole, not at individual elements. *Id*. at 223. The court agreed. *Id*. The court noted that the regulations make clear that § 35.150(a) does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). The regulations define "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 35.104. Thus, the court concluded that the City was not required to make each portion of the stadium readily accessible. *Pascuiti*, 87 F. Supp. 2d at 223. Rather, the issue was whether the stadium, when viewed in its entirety, was readily accessible. *Id*. This is commonly referred to as the "program access" requirement.

*See* Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services, 28 C.F.R. Pt. 35, App. A, at 492.

Likewise, the seminal issue in this case is whether the courthouse as a whole, rather than the discrete units/facilities therein, are accessible. Based on the evidence presented, *see infra* p. 11, the Court concludes that it is not.[8] Therefore, based upon the plain language of § 35.150(a), and the *Pascuiti* court's analysis thereof, the Court rejects Defendant's contention that Plaintiffs' chief complaints relate solely to the alleged inaccessibility of state court facilities, for which it cannot be held liable.

Alternatively, Defendant argues that reasonable modifications have been made to render the services, programs, and activities offered at the courthouse accessible. In particular, Defendant notes that: 1) the Gallatin County Fiscal Court regularly convenes at an alternative site that is fully accessible (the Mary Bogardus Building),[9] 2) court proceedings are held on the first floor of the courthouse, or by telephone when possible, 3) transactions that would typically occur on the second floor are handled on the first floor, and 4) Circuit Court Clerk, Sue O'Connor, has permitted Plaintiff McIntyre to work on the first floor, and arranged for her co-workers to retrieve items from the second floor when she needs them. Plaintiffs challenge the "reasonableness" of these purported modifications, and claim that they have not been made in an "integrated setting," as required under 28

---

[8] Other courts presented with similar facts have reached the same conclusion. *See Matthews v. Jefferson*, 29 F. Supp. 2d 525 (W.D. Ark. 1998); *Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998).

[9] The Court recognizes that a public entity may comply with Title II by making its services, programs, and activities available at another facility that is accessible. *See* 28 C.F.R. § 35.150(b)(1). However, the proceedings of the Gallatin County Fiscal Court are only a small part of the services, programs, and activities that occur at the courthouse.

13

C.F.R. § 35.150(b)(1). Finally, Defendant has raised a cost-based defense, claiming that the proposed renovations would result in an undue financial burden.

As an initial matter, the Court notes that, while laudable, the fact that Defendant has made the modifications listed above is not an affirmative defense to Plaintiffs' claims. First, as a practical matter, the modifications do not address the specific accessibility issues raised by Plaintiffs, namely the condition of the sole handicapped-accessible entrance to the courthouse and the lack of public restrooms on the first floor. More importantly, the regulations impose an affirmative duty upon public entities to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

The regulations do, however, contain an important caveat regarding a public entity's duty to comply with Title II. Section 35.150(a)(3) states that a public entity is not required to "take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." Defendant claims that "the expense associated with making the existing facilities at the Gallatin County Courthouse fully accessible to individuals with disabilities is extraordinary, particularly in relationship to Gallatin County's budget." (Doc. #38, p.11). In support, Defendant notes that the projected cost of the state-approved renovations is $2.26 million; whereas its entire budget for 2003-04 was just over $3 million. Defendant's position also assumes that the renovations required to make the courthouse ADA-compliant are, in fact, the same as those authorized for funding by the General Assembly.[10] As the following

---

[10] The project, as approved by the State, includes: the acquisition of approximately 0.5 acres of land; the construction of a two-story addition consisting of approximately 7100 square feet; renovation of existing facilities, consisting of 5500 square feet; installation of an elevator and shaft, restrooms on the first floor, and automated doors; and roof and HVAC repairs.

14

discussion demonstrates, the Court concludes that Defendant has failed to sustain its burden in this regard.

Section 35.150(a)(3) provides that:

> In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with § 35.150(a) of this part would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

28 C.F.R. § 35.150(b)(3). There is no evidence that Defendant has complied with these requirements. More importantly, the Court is not convinced that the renovations required to make the courthouse ADA-compliant are, in fact, the same as those authorized for funding by the State.

For all of these reasons, Defendant's motion for summary judgment with respect Count I of Plaintiffs' complaint is **denied**, and Plaintiffs' cross motion for summary judgment on Count I is **granted**.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's motion for summary judgment (Doc. # 38) be, and hereby is, **granted** as to Counts II and III of Plaintiffs' complaint; and **denied** as to Count I;

15

(2)   Plaintiffs' motion for summary judgment (Doc. # 45) be, and hereby is, **granted** as to Count I of their complaint; and **denied** as to Count III;

(3)   Plaintiffs' motion to strike (Doc. # 52) be, and hereby is, **denied**; and

(4)   This matter is set for a Status Conference on **January 26, 2006 at 10:00 a.m. in Covington**.

This 17th day of January, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-03-156-MSJ.wpd