UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 03-156-DLB

ELSIE EWBANK, ET AL.                                                                 PLAINTIFFS

vs.                              **MEMORANDUM OPINION & ORDER**

GALLATIN COUNTY, KY                                                                  DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I.   INTRODUCTION

This matter is presently before the Court upon Defendant's Motion for Summary Judgment (Doc. # 38) on Plaintiffs' claims for compensatory damages under the American's with Disabilities Act (ADA), to which Plaintiffs filed a Response (Doc. # 47) and Defendant filed a subsequent Reply (Doc. # 50). In accordance with the Court's Memorandum Opinion and Order ("Opinion & Order") dated January 17, 2006 (Doc. # 54), in which the Court granted summary judgment for Plaintiffs as to the ADA violation, all substantive claims have been adjudicated and the Court's review of Defendant's Motion for Summary Judgment is now limited to the issue of compensatory damages.

Pursuant to the Court's Opinion & Order, a status conference was held on February 8, 2006, to discuss the issue of potential damages. Parties were directed to submit supplemental briefs concerning the availability of compensatory damages. Consequently, Defendant filed a Supplemental Brief in Support of its Motion for Summary Judgment on the Issue of Compensatory Damages (Doc. # 63). Plaintiffs filed a Supplemental Brief in

Opposition to Defendant's Motion for Summary Judgment Regarding Compensatory Damages (Doc. # 62). Therefore, the Motion for Summary Judgment, as to the issue of compensatory damages, is now ripe for the Court's review. For the following reasons, Defendant's motion will be granted.

## II. FACTUAL BACKGROUND

In the interest of brevity and given the posture of this case post-adjudication, the Court hereby incorporates the "Factual Background & Procedural History" section of its Opinion & Order (Doc. # 54, pp. 2-5). The brief recitation of events to follow, therefore, will be restricted to developments occurring subsequent to the Court's Opinion & Order.

Over the past nine months, since the Court determined that the Gallatin County Courthouse (the "Courthouse") was in violation of the ADA, there has been relatively significant progress leading up to the actual construction for the Courthouse addition, although both parties correctly point out that no sod has been "turned" to this point. Despite Plaintiffs' inexplicable assertion that no funding has been secured, the record clearly demonstrates that funds have been appropriated by the Kentucky Legislature and that interim financing has been secured because of a funding deferral. In fact, given that nearly all preparatory measures for the construction have been completed (e.g., site surveys, numerous planning meetings, project design, etc.), it is readily apparent that funding has been in place for some time.

Although Defendant estimates that the construction should be commencing in the next few weeks "barring extraordinary and unforeseeable contingencies," the project is only now in the middle of the bidding process to retain a construction company. To this point, no actual construction has been done and no alterations have been made to the

Courthouse in an effort to make it ADA compliant in the interim. The Courthouse is scheduled to open, nevertheless, in December of 2007.

### III.   ANALYSIS

#### A.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *See id.* at 324. A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

#### B.   Compensatory Damages

##### 1.   Burden of Proof

The remedial section of Title II of the ADA, 42 U.S.C. § 12133, incorporates by reference the "remedies, procedures, and rights" provisions of § 505 of the Rehabilitation

Act of 1973. *See* 29 U.S.C. § 794a.[1] Section 505 of the Rehabilitation Act, in turn, adopts "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2). In short, the remedies, procedures, and rights available under Title II of the ADA parallel those available under Title VI of the Civil Rights Act of 1964. Under these acts, compensatory damages are available "only on a showing of intentional discrimination by the defendant." *The Ability Center of Greater Toledo v. City of Sandusky*, 133 F. Supp. 2d 589, 593 (N.D. Ohio 2001) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999)) (holding that "Plaintiffs have not established that the City failed to implement the policies based on an intent to discriminate against them as disabled individuals...[and] the City's motion is, therefore, granted as to [the compensatory damages] claim.").

On the other hand, the parties have both briefed the issue of compensatory damages under a standard apart from intentional discrimination, that is, deliberate indifference. Although the standard of discriminatory intent is now the settled law within the Sixth Circuit and the majority of its sister circuits, despite the sparse case law on the issue, the parties' reliance on a differing standard is not entirely misplaced. *See Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 871 (S.D. Ohio 2002) (citing *Davis v. Flexman*, 109 F. Supp. 2d 776, 790 n.14 (S.D. Ohio 1999) (recognizing that "a number of courts of appeals have held that entitlement to compensatory damages...requires proof the

---

[1] Section 505 of the Rehabilitation Act actually offers two sets of remedies, one for employment discrimination (§ 794a(a)(1)), and one for discrimination by entities providing federal assistance (§ 794a(a)(2)). *See Johnson v. City of Saline*, 151 F.3d 564, 573 (6th Cir. 1998). In *Johnson*, the Sixth Circuit clarified that the remedies enumerated in § 794a(a)(2) apply in Title II cases. *See id.*

defendant has intentionally discriminated against the plaintiff."). Various courts have held that "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *See Davis*, 109 F. Supp. 2d at 790 n.14 (quoting *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999)); *see also Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *aff'd in part and vacated and remanded in part on other grounds*, 226 F.3d 69 (2d Cir. 2000).

In other words, while intentional discrimination or discriminatory intent is clearly the required showing for Plaintiffs to prevail on the issue of compensatory damages, it is possible to make this showing by establishing deliberate indifference on the part of Defendant. *See Center*, 227 F. Supp. 2d at 871. Nevertheless, Plaintiffs have failed to meet their burden under either standard and compensatory damages are, therefore, not available based on the record currently before the Court.

### 2. Lack of Discriminatory Intent or Deliberate Indifference

Plaintiffs seek compensatory damages for the embarrassment and humiliation they have allegedly suffered as a result of Defendant's failure to comply with the ADA.[2] Defendant argues, however, that Plaintiffs are not entitled to compensatory damages because there is an absence of evidence demonstrating intentional discrimination or even deliberate indifference. Plaintiffs in turn assert that, at this stage, the question of damages is not appropriate for summary adjudication because genuine issues of material fact exist, therefore requiring a hearing to allow Plaintiffs to offer proof of their damages and

---

[2] Plaintiffs concede the unavailability of punitive damages pursuant to Title II of the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

Defendant's failure to act.

According to Plaintiffs, the issue of compensatory damages should survive summary judgment because of fact issues surrounding the "time-line" of Defendant's alleged failure to act and because of Defendant's "refusal to consider any remedy other than a multi-million dollar renovation." First, as to the latter point, Defendant readily admits that no renovations have been made to the Courthouse and that no renovations are planned other than the primary, multi-million dollar construction project.[3] However, while evidence of interim measures may certainly have indicated good faith on the part of Defendant, the lack of any such measures does not evince discriminatory intent by Defendant. In light of the sheer scope of the intended addition to the Courthouse, it is not unreasonable to expect that no interim measures would be taken, costly or not, and it certainly fails to rise to the level of discrimination or indifference.

Second, with respect to Plaintiffs' primary claim that the steps taken by Defendant–or alleged lack thereof–in an effort to remedy the violation establish a complete failure to act, the record does not support a finding that Defendant's actions or omissions were taken with a discriminatory intent or even with deliberate indifference. Despite the reality that Defendant was not officially put on notice until the Supreme Court's decision in *Tennessee v. Lane*, which found that states did not have Eleventh Amendment immunity with respect to claims based upon Title II of the ADA, the birth of the construction project still occurred several years earlier. *See* 541 U.S. 509 (2004). Defendant readily admits

---

[3] Defendant does insist that any interim measures would not remedy the subject matter of Plaintiffs' claims and that, furthermore, the enormous cost of any such measures render them impractical in light of the overall construction project, despite Plaintiffs' claim that simple and inexpensive measures could be taken.

that they have been aware of the Courthouse's accessibility problems for some time, but that a plan has been in the works during the bulk of that period.[4]

Although the planning stages for the Courthouse renovation may have been unnecessarily drawn out and the process has been anything but expedited, there has never been a true failure to act on Defendant's part, at least not to the extent the failure would constitute intentional discrimination or deliberate indifference. If Defendant had indeed possessed discriminatory intentions, discussions for renovations would have never begun five years before the Courthouse was "legally" placed on notice by *Lane*. Similarly, securing $2,229,000 worth of funding for the renovation (representing roughly two-thirds of Defendant's annual budget), and doing so almost a year before this Court's Order of compliance and only a year after *Lane*, is far from being deliberately indifferent, even if the steps were arguably taken at a snail's pace with, as Plaintiffs contend, repeated "illusory deadlines."

Put simply, the Court has already determined that Defendant was not in compliance with the ADA and was therefore ordered to remedy the non-compliance. Defendant has even admitted that the problems with Courthouse accessibility were brought to light long before Plaintiffs filed this action. However, compensatory damages do not arise automatically from compliance failures. They are reserved solely for cases where there is

---

[4] It is important to note the legal distinction that is at work here. Although it is impossible to know whether Defendant truly knew of their ADA non-compliance, admitting knowledge of accessibility problems that are facial violations of Title II does not necessitate knowledge that the Courthouse was legally required to make renovations. This is because the standards under the ADA not only look to the objective characteristics of the allegedly non-compliant structure, but also ask whether the required changes would create undue financial and administrative burdens, among other more subjective standards. In other words, knowing that accessibility issues exist does not automatically equate to knowledge of wrongful conduct under the ADA.

evidence of discriminatory intent, or where intentional discrimination can be inferred from deliberate indifference. Plaintiff has offered no evidence that suggests an intent to discriminate and the actions that were taken by Defendant, while not exemplary, never constituted intentional discrimination or deliberate indifference.

Accordingly, even in viewing the undisputed and material facts in a light most favorable to Plaintiffs, the issue of compensatory damages cannot survive summary judgment because there is not a genuine issue for trial. Moreover, Defendant must prevail as a matter of law because Plaintiffs have not met their burden of establishing that Defendant acted with a discriminatory intent, or alternatively, with deliberate indifference.

### IV.   CONCLUSION

In accordance with the foregoing analysis, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. # 38) be, and hereby is, **granted** as to the issue of compensatory damages; and

(2) This matter is set for a Status Conference on **November 9, 2006 at 1:30 p.m.** to address the remaining issue of fees and costs.

This 17th day of October, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\2-03-156-Ewbank (Damages MSJ).wpd